DIANE V. GRENDELL, J.
{¶ 1} Plaintiff-appellant, John Kuivila, appeals the Judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, the City of Newton Falls, Mary Ann Johnson, Richard Monteville, Nancy Hoffman, Philip Beer, Jim Luonuansuu, Richard Zamecnik, and Jack Haney. The issues before this court are whether the holding of an emergency meeting for the purpose of adjourning into executive session to discuss the termination of the chief of police's employment violates a contract provision that employment must be terminated at a duly authorized public meeting and in accordance with Ohio's Sunshine Law; whether crass sexual comments directed to the chief of police by a councilwoman, three to four times a month over a couple of years, creates a genuine issue of material fact sufficient to support a claim of hostile work environment sexual harassment; and whether an adverse, final judgment in federal court on a retaliation claim brought under 42 U.S.C. 2000e bars, under the principles of res judicata, a state-law retaliation claim under R.C. 4112.02(I) based on the same underlying facts. For the following reasons, the judgment of the lower court is affirmed.
{¶ 2} On July 18, 2014, Kuivila filed a Complaint against the City of Newton Falls, its city council members (Johnson, Monteville, Hoffman, Beer, Luonuansuu, and Zamecnik), the city manager (Haney), and its former mayor (Pat Layshock). Kuivila raised claims of Retaliation under R.C. 4112.02 (Count One), Sexual Harassment/Gender Discrimination under R.C. 4112.02 (Count Two), Violation of Ohio Sunshine Laws (Count Three), and Wrongful Discharge-Breach of Contract (Count Four).[1]
{¶ 3} On September 19, 2014, the defendants filed their Answer collectively.
{¶ 4} On September 9, 2015, the defendants filed a Motion for Summary Judgment.
{¶ 5} On September 16, 2015, Kuivila filed a Motion for Summary Judgment on Counts Three & Four of Plaintiff's Amended Complaint.
{¶ 6} On November 12, 2015, Kuivila filed his Opposition to Defendants' Motion for Summary Judgment.
*768 {¶ 7} On January 29, 2016, the trial court granted the defendants' Motion for Summary Judgment and denied Kuivila's Motion for Summary Judgment.
{¶ 8} On February 10, 2016, Kuivila filed a Notice of Appeal. On appeal, Kuivila raises the following assignments of error:
{¶ 9} "[1.] The trial court erred in granting summary judgment in appellees' favor on appellant's breach of contract claim, and in the alternative the trial court erred in overruling appellant's motion for summary judgment on his breach of contract claim."
{¶ 10} "[2.] The trial court erred in granting summary judgment in appellees' favor on appellant's violation of Ohio Sunshine Law claim, and in the alternative the trial court erred in overruling appellant's motion for summary judgment on this claim."
{¶ 11} "[3.] The trial court erred in granting summary judgment in appellees' favor on appellant's claim of sexual harassment based on a Hostile Work Environment."
{¶ 12} "[4.] The trial court erred in granting summary judgment in appellees' favor on appellant's claim of retaliation."
{¶ 13} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo, i.e., as a matter of law and without deference to the conclusions of the lower court." (Citation omitted.) Knoefel v. Connick , 2017-Ohio-5642, 94 N.E.3d 17, ¶ 15.
{¶ 14} In the first assignment of error, Kuivila contends his termination as police chief by vote of the Newton Falls City Council, on February 12, 2013, violated his employment contract with the City.
{¶ 15} On September 21, 2009, Kuivila and the City of Newton Falls entered into an Employment Agreement, containing the following relevant provision:
Section 11: Termination
For the purpose of this agreement, termination shall occur when:
A. The majority of Council votes to terminate the Employee at a duly authorized public meeting.
{¶ 16} The City Council voted to terminate Kuivila's employment at an "Emergency session on Tuesday, February 12, 2013 at 4:30 p.m. in Council Chambers," through the passage of Ordinance 2013-02: An Ordinance Terminating the Employment Agreement Between the City of Newton Falls and Police Chief John Kuivila and Declaring an Emergency." Ordinance 2013-02 was passed by unanimous vote of the City Council, comprising defendants Johnson, Monteville, Beer, Zamecnik, and Hoffman.
{¶ 17} Ordinance 2013-02 provides, in relevant part:
WHEREAS, Newton Falls City Council exercise their rights to terminate the Police Chief's contract under Section 11, Part A of his Employment Agreement; and *769 WHEREAS, City Council believes the Police Chief has undermined his ability to remain an effective leader.
THE COUNCIL FOR THE CITY OF NEWTON FALLS, STATE OF OHIO, HEREBY ORDAINS:
SECTION I: Newton Falls City Council hereby terminates the agreement between the City of Newton Falls and Police Chief, John Kuivila, effective immediately.
SECTION II: This Ordinance is hereby declared to be an emergency measure, necessary for the immediate preservation of the public peace, health, welfare, or safety of the City, for the reason that an immediate termination of the Employment Agreement is necessary.
{¶ 18} Kuivila contends his termination violated the Employment Agreement because it did not occur at a "duly authorized public meeting." Specifically, Kuivila maintains that the February 12, 2013 emergency session did not comply with the requirements of Article III of the Charter of the City of Newton Falls:
SECTION 8. Emergency Meetings
Emergency meetings may be called by the Mayor, the Vice-President of Council or any two members of the Council. There shall be at least ten hours notice in writing of such emergency meeting served personally on each member of Council or at his usual place of residence. Such notice shall state the subject(s) to be considered at the meeting and no other business may be considered at such meeting.
* * *
SECTION 21. Emergency Ordinances
When necessary, for the preservation for the public peace, health, welfare, or safety, the Council, by affirmation vote of two-thirds of the members elected thereto, may adopt an emergency ordinance which shall take effect upon passage. Such emergency ordinance shall set forth and define the specific facts designating the emergency. Such emergency ordinance shall require no public hearing and both the first and second reading may be passed at the same meeting. Such emergency ordinance shall be published as other ordinances after final passage.
{¶ 19} Kuivila argues the February 12, 2013 emergency session was not duly authorized "because the City Council considered business outside of what was noticed in the agenda for the emergency meeting." Appellant's brief at 14. According to the Emergency Meeting Agenda, the purpose of the meeting was: "1. Motion to adjourn into executive session for the purpose of personnel in reference to employment or dismissal of the Chief of Police." According to the minutes of the emergency session, Ordinance 2013-02 was added to the agenda on Hoffman's motion. Kuivila maintains that, since Ordinance 2013-02 was not included in the Emergency Meeting Agenda, it could not be considered by the Council at the emergency session. We disagree.
{¶ 20} The Emergency Meeting Agenda fairly established that the subject under consideration was the continued "employment or dismissal of the Chief of Police." According to the Charter, this was the only subject that could be considered. Kuivila would interpret the Charter provision as restricting Council's ability to act on the subject under consideration, i.e., that the only action that could be taken by Council was the adjournment into executive session. Such an interpretation is overly restrictive. The Charter requires notice of subjects to be considered, not possible actions that could be taken with respect to the subjects considered. The passage of Ordinance 2013-02 was added to the agenda during the session, but this Ordinance *770 did not exceed the scope of the subject under consideration which was the "employment or dismissal of the Chief of Police." The passage of an ordinance terminating the police chief's Employment Agreement does not violate a City Charter provision restricting the business that may be considered at an emergency meeting when notice of the meeting advised that the Council would adjourn into executive session "for the purpose of personnel in reference to employment or dismissal of the Chief of Police."
{¶ 21} Kuivila argues the February 12, 2013 emergency session was not "a true public meeting * * * because the sole business to be considered as noticed on the agenda for the emergency meeting was for the City's Council to adjourn into an executive session." Appellant's brief at 16. According to Kuivila, the emergency session could not be a public meeting if "all substantive business was to be conducted in private." We disagree.
{¶ 22} There is no evidence that the February 12, 2013 emergency session was not open to the public as that term is commonly understood. Notice of the meeting was sent to numerous media outlets, including the Weekly Villager, the Tribune Chronicle, the Vindicator, and the Review Newspapers. Although discussion of whether to retain Kuivila as police chief was conducted in executive session, the motion to add Ordinance 2013-02 to the agenda and the passage of that Ordinance occurred during the open or public portion of the session. The Employment Agreement required that the vote to terminate Kuivila take place at a "public meeting," not that the deliberations underlying the decision to terminate be made public. Compare Stewart v. Lockland School Dist. Bd. of Edn. , 144 Ohio St.3d 292, 2015-Ohio-3839, 42 N.E.3d 730, ¶ 14 (in the absence of anything in the public employee's contract to the contrary, "[n]othing prevented Lockland [school district] from * * * adjourning into executive session to deliberate upon its decision [to terminate the employee]" as long as "he had notice of the special meeting regarding his employment status and an opportunity to be heard at that meeting").
{¶ 23} Kuivila argues the February 12, 2013 emergency session was not duly authorized under the City's Charter "because the emergency meeting was not called by either the City's Mayor, vice president of Council, or by two Council members." Appellant's brief at 17. Kuivila bases this claim on the fact that "[t]he notice provided for the February 12, 2013 emergency meeting was prepared and then sent by the City's Clerk, Kathleen King-who was not the mayor, vice-president of council, or two members of the City's Council." We disagree.
{¶ 24} The inference that, because the City Clerk prepared the notice of the emergency session, the meeting was not called by a person authorized to do so is not a reasonable inference. King testified, by deposition, that as Clerk she usually sends out the notices for such meetings. The record is effectively silent as to who called the emergency meeting. We will not infer that it was someone other than "the Mayor, the Vice-President of Council or any two members of the Council" from such a record. The minutes of the emergency session indicate that the meeting was called to order by the Mayor and that all business was initiated by members of Council, including then Vice-President of Council, Hoffman.[2]
*771 {¶ 25} Kuivila argues that Ordinance 2013-02: An Ordinance Terminating the Employment Agreement Between the City of Newton Falls and Police Chief John Kuivila and Declaring an Emergency was not a properly enacted emergency ordinance and, therefore, "cannot be permitted to stand under Section 11A of his [employment] contract." Appellant's brief at 19. Kuivila contends that "the need to adopt it was not an emergency and, even if there was an emergency, that need was not specifically set forth in the ordinance as required by the City's Charter."
{¶ 26} The Charter mandates that an emergency ordinance may be adopted when necessary "for the preservation for the public peace, health, welfare, or safety," and that the ordinance must "set forth and define the specific facts designating the emergency." Ordinance 2013-02 states that it was Council's belief that Kuivila had "undermined his ability to remain an effective leader" as Police Chief and, therefore the emergency ordinance was "necessary for the immediate preservation of the public peace, health, welfare, or safety of the City, for the reason that an immediate termination of the Employment Agreement is necessary."
{¶ 27} Kuivila may not raise the lack of a legitimate emergency as a disputed issue of material fact precluding summary judgment. By formally complying with the Charter requirements for emergency legislation, Ordinance 2013-02 satisfies the Employment Agreement provision that his termination be voted at a duly authorized public meeting.[3]
{¶ 28} This court has previously recognized the case law holding that the underlying justification for the passage of emergency legislation is not subject to judicial review:
"Where an ordinance, passed by the council of a municipality, is declared to be an emergency measure in accordance with that municipality's laws and sets forth the reasons for the immediate necessity thereof, the legislative determination of the existence of an emergency is not reviewable by a court." Jurcisin v. Cuyahoga Cty. Bd. of Elections (1988), 35 Ohio St.3d 137, paragraph three of the syllabus; State ex rel. Laughlin v. James , 115 Ohio St.3d 231, 2007-Ohio-4811, at ¶ 24 ("Ohio is among those jurisdictions that hold that a declaration of an emergency ordinance is final and is not reviewable by courts") (citation omitted). However, language that is "purely conclusory, tautological, or illusory * * * fails to meet the R.C. 731.30 requirements for a valid emergency ordinance." State ex rel. Webb v. Bliss , 99 Ohio St.3d 166, 2003-Ohio-3049, at ¶ 14 (citation omitted).
"The statutory requirement of stating reasons for declaring the emergency is provided only to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency. If there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives." State ex rel. Moore v. Abrams (1991), 62 Ohio St.3d 130, 132 (citation omitted).
Mentor ex rel. Deitrick v. Mentor , 11th Dist. Lake No. 2007-L-084, 2008-Ohio-2138, 2008 WL 1934497, ¶ 57-58.
*772 {¶ 29} We note, for the purpose of establishing context for the February 12, 2013 emergency session, that the issue of terminating Kuivila was first raised at a regularly scheduled Council meeting on January 28, 2013, after complaints were made against Kuivila by employees of the police department.[4] At this meeting, a motion was passed "to direct the City Manager and Law Director to determine steps for disciplinary action for the Police Chief up to including [sic] termination of his contract." At a February 4, 2013 regular meeting, Council passed a motion to "begin removal of the Police Chief for discipline reasons and invoke Section 11, Part D of his contract and begin the pre-discipline hearing process."
{¶ 30} Kuivila argues the February 12, 2013 emergency session was not duly authorized under the City's Charter because a genuine issue of material fact exists as to "whether all individuals who needed to receive notice of the February 12, 2013 emergency meeting received timely notice." Appellant's brief at 20. The Charter requires "at least ten hours notice in writing of such emergency meeting served personally on each member of Council or at his usual place of residence." Kuivila maintains "it is not known whether all of the notices were delivered within the required ten hours before the emergency meeting," relying on Johnson's deposition testimony that she was unaware at what time notice was left on the porch of her residence and former Newton Falls' Mayor, Lyle Waddell's, deposition testimony that he had no idea at what time his wife signed for the receipt of his written notice.[5]
{¶ 31} As with the issue of whether the emergency meeting was called by a person authorized to do so, it cannot be reasonably inferred that Johnson and Waddell did not receive timely written notice of the emergency meeting from the fact that they can no longer recall when they actually received notice. Moreover, any defect in the provision of notice would constitute an immaterial and inconsequential breach of the Employment Agreement. The mayor, all members of Council, the City Manager, the City Clerk, and the Law Director were all present at the February 12, 2013 emergency session. The passage of the Ordinance terminating the Employment Agreement was unanimous.
{¶ 32} The first assignment of error is without merit.
{¶ 33} In his second assignment of error, Kuivila asserts that the February 12, 2013 emergency session violated section 121.22 of the Revised Code, commonly known as the Sunshine Law or Open Meetings Act, and thus was not a duly authorized meeting. Kuivila cites to R.C. 121.22(G), which provides "the members of a public body may hold an executive session * * * only at a regular or special meeting * * *." Kuivila concludes that, "because Appellees conducted an executive session in its emergency meeting on February 12, 2013, the meeting was in violation of R.C. 121.22(G). Appellant's brief at 22. To the contrary, we hold that the February 12, 2013 emergency session was not subject to the provisions of R.C. 121.22(G).
*773 {¶ 34} Newton Falls is a chartered municipality in possession of "all powers of local self-government." Newton Falls Charter, Article I, Section 2. "The general rule is that in matters of local self-government, if there is a conflict between a charter provision and a statute, the charter provision prevails." State ex rel. Bardo v. Lyndhurst , 37 Ohio St.3d 106, 108-109, 524 N.E.2d 447 (1988). Accordingly, the provisions of the City's Charter will prevail over those of R.C. 121.22(G). "Although R.C. 121.22, Ohio's sunshine law, provides several exceptions to the general requirement of open meetings by allowing executive sessions in certain circumstances, R.C. 121.22 is not applicable where the charter supersedes it." State ex rel. Fenley v. Kyger , 72 Ohio St.3d 164, 166, 648 N.E.2d 493 (1995) ; Kanter v. Cleveland Heights , 2017-Ohio-1038, 86 N.E.3d 1022, ¶ 26.
{¶ 35} Article III, Section 6, of the Newton Falls Charter provides: "[T]he Council shall meet at such times as may be prescribed by its rules, regulations, ordinances and by-laws * * *. All regular and special meetings of Council shall be subject to the provisions of the Ohio Sunshine Law, codified in Section 121.22 of the Ohio Revised Code." The City's Charter distinguishes between special meetings (Article III, Section 7) and emergency meetings (Article III, Section 8), a fact acknowledged by Kuivila. Appellant's brief at 22 ("the City's Charter specifically defines these two meetings differently"). That same Charter also limits the applicability of R.C. 121.22 to regular and special meetings, but not emergency meetings. Accordingly, it cannot be claimed that the February 12, 2013 emergency session violated the Sunshine Law, inasmuch as that law did not apply to the meeting.[6]
{¶ 36} The second assignment of error is without merit.
{¶ 37} Under the third assignment of error, Kuivila challenges the trial court's grant of summary judgment with respect to his claim of Sexual Harassment based on hostile work environment. R.C. 4112.02(A) ("[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment").
{¶ 38} "In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Hampel v. Food Ingredients Specialties, Inc. , 89 Ohio St.3d 169, 729 N.E.2d 726 (2000), paragraph two of the syllabus.
{¶ 39} Kuivila produced the following evidence in support of his sexual harassment claim:
{¶ 40} Kuivila began his employment as chief of police for Newton Falls in October 2008.
*774 {¶ 41} In November 2009, Kuivila responded to complaints that Johnson, who was running for a position on the City Council, was flashing her breasts at a polling location. When he admonished her that her conduct was inappropriate, Johnson replied that he was jealous because he did not get to see her breasts.
{¶ 42} On November 2, 2009, at a city council meeting, Johnson told a friend of hers that she wanted to feel Kuivila's "balls" to see how big they were. Johnson later told Kuivila, "I bet you have a set," and pointed to his crotch.
{¶ 43} On November 16, 2009, Johnson again made reference to Kuivila about his "balls," expressing a desire to feel them.
{¶ 44} On January 11, 2010, Johnson brushed past Kuivila while leaving a city council meeting. Kuivila apologized that his "belly was in her way." Johnson pointed to Kuivila's crotch and commented, "I think it was something else." On this occasion, Johnson "actually put her fingers on [Kuivila's] penis through [his] pants when she pointed."
{¶ 45} Between January and April 2010, Kuivila encountered Johnson "at least three or four times a month," and on each occasion "she made similar, unwelcome, sexual comments."
{¶ 46} Since April 2010, Kuivila "encountered and had many incidents of similar conduct from Mary Ann Johnson, which were based on my gender, were sexually suggestive, offensive and unwelcome."
{¶ 47} In the summer of 2012, Kuivila's wife, Danielle, was watching her husband play a softball game. She heard Johnson say in reference to Kuivila that she would like to "fuck his ass."
{¶ 48} Kuivila claimed that Johnson's conduct affected his ability to do his job and he was "specifically concerned of how her comments and behavior affect [his] reputation and image as the Chief of the City's Police Department." The situation with Johnson was further aggravated by her appointment to the Council's Safety Committee, which "further affected [his] ability to do [his] job."
{¶ 49} None of the alleged incidents with Johnson occurred at the police station, but, rather, at council meetings and public events.[7]
{¶ 50} We conclude, upon independent review of the evidence, that Kuivila has failed to raise a genuine issue of material fact as to whether Johnson's "conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment." To satisfy this element of a claim for hostile-environment sexual harassment, "the trier of fact, or the reviewing court, must view the work environment as a whole and consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment." Hampel , 89 Ohio St.3d 169, 729 N.E.2d 726, at paragraph five of the syllabus. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 180, 729 N.E.2d 726, citing Harris v. Forklift Sys., Inc. , 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).
{¶ 51} Several of the incidents noted by Kuivila have little evidentiary value beyond *775 demonstrating a course of conduct. The incidents from November 2009 occurred before Johnson had taken office as a councilwoman and cannot, therefore, be properly considered workplace harassment. The incident at the softball game in the summer of 2012 appears, at most, to have been a comment made to a friend of Johnson that Kuivila's wife overheard.
{¶ 52} What remains are occasional crass sexual comments, made three to four times a month over a period of a couple of years, and an isolated incident of touching.[8] In the circumstances of the present case, these are insufficient to establish a hostile work environment. We note that the comments were not made in the context of Kuivila's immediate work environment. There is no evidence that Johnson was ever present in the Newton Falls police station or made her comments in the presence of other police officers. Moreover, Johnson was not Kuivila's immediate supervisor. She did not work with Kuivila on a day-to-day basis and had no direct authority over how Kuivila performed his employment duties. As a member of City Council, Johnson had a vote in regards to Kuivila's continuing employment as well as over certain aspects of department policy. But this vote was not a majority vote-she was just one of five Council members-and there is no evidence that any other members of Council approved of or colluded in Johnson's alleged harassment. Johnson was not physically intimidating. She was described by Kuivila as an older lady who, in height, reached only to his chest. Finally, there is a lack of evidence that her conduct unreasonably interfered with his work performance. Kuivila testified that he was concerned how her comments could affect his reputation and image as the Chief of Police, but he provides no specific examples of how they did so. Such concerns, without more, do not create an issue as to whether the terms, conditions, or privileges of his employment had been altered. Harris at 21, 114 S.Ct. 367 (a valid claim exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' * * * that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' ") (citation omitted).
{¶ 53} The third assignment of error is without merit.
{¶ 54} Under the fourth and final assignment of error, Kuivila contends the trial court erred in granting summary judgment with respect to his claim of Retaliation. R.C. 4112.02(I) ("[i]t shall be an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section").
{¶ 55} The defendants assert, and we agree, that Kuivila's Retaliation claim is barred by res judicata, inasmuch as this claim has been raised and decided, adversely to Kuivila, in federal litigation.
{¶ 56} "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. , 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus. More specifically, "a claim litigated to finality in the United States district court cannot be relitigated in a state court when the state claim involves the identical subject matter previously litigated in the federal *776 court, and there is present no issue of party or privity." Rogers v. Whitehall , 25 Ohio St.3d 67, 70, 494 N.E.2d 1387 (1986) ; Marrie v. Internatl. Local 717 , 11th Dist. Trumbull No. 2001-T-0046, 2002-Ohio-3148, 2002 WL 1357260, ¶ 37 ("because the dismissal of appellant's 1998 discrimination lawsuit by the federal court was treated as an adjudication on the merits, his present discrimination lawsuit against appellee is now barred by the doctrine of res judicata").
{¶ 57} The Ohio Supreme Court has "determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq. , Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112," and that claims under both the federal and state statutes share the same evidentiary standards. Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm. , 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981). Accordingly, "Ohio courts rely on federal law when deciding retaliation claims," and a "plaintiff's burden for his federal and state retaliation claims is the same." Johnson v. Toledo Bd. of Edn. , N.D.Ohio No. 3:02CV7509, 2003 WL 22436127, *4 (Oct. 23, 2003) ; compare 42 U.S.C. 2000e-3(a) ("[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this subchapter") with R.C. 4112.02(I), supra .
{¶ 58} In Kuivila v. Newton Falls , N.D.Ohio No. 4:14-cv-01593, 2016 WL 541478 (Feb. 11, 2016), Kuivila raised a claim of Retaliation under 42 U.S.C. 2000e on the grounds that "he engaged in a protected activity when he complained about sexual harassment by Defendant Johnson and that he was retaliated against for making such complaints." Id. at *2. The district court granted summary judgment in favor of the defendants (the same defendants herein), finding that Kuivila "failed to present evidence sufficient to establish an inference of a causal connection between his protected activity and his termination," and "cannot demonstrate that Defendants' articulated non-discriminatory reason for his termination was a pretext." Id. at *15.
{¶ 59} The district court's dismissal of Kuivila's Retaliation claim constitutes a valid, final judgment on the merits, thus barring him from pursuing the identical claim under R.C. 4112.02(I). Lautermilch v. Findlay City Schools , 3d Dist. Hancock No. 5-03-23, 2003-Ohio-6711, 2003 WL 22939485, ¶ 27 (res judicata bars an individual from pursuing a discrimination claim under state law when a prior Title VII claim involved the same parties and causes of action and resulted in a final judgment on the merits); Abram v. Greater Cleveland Regional Transit Auth. , 8th Dist. Cuyahoga No. 80127, 2002-Ohio-2622, 2002 WL 1041737, ¶ 31 ("[t]he federal court entered a final judgment on the merits of the disparate treatment and racial discrimination claims and, therefore, we find that the doctrine of res judicata bars appellants' state claims of disparate treatment and intentional race discrimination").
{¶ 60} The fourth assignment of error is without merit.
{¶ 61} For the foregoing reasons, the Judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of the defendants on all claims of Kuivila's Amended Complaint, is affirmed. Costs to be taxed against appellant.
THOMAS R. WRIGHT, J., concurs,
COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.
COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.
*777 {¶ 62} This appeal involves the trial court's granting of appellees' motion for summary judgment.
{¶ 63} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. Davis v. Loopco Industries, Inc. , 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. See e.g. Civ.R. 56(C).
{¶ 64} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. Dupler v. Mansfield Journal Co. , 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. Murphy v. Reynoldsburg , 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. Pierson v. Norfork Southern Corp. , 11th Dist. No. 2002-A-0061, 2003-Ohio-6682 [2003 WL 22931361], ¶ 36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105 * * * (1996)." (Parallel citations omitted.) Meloy v. Circle K Store , 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, 2013 WL 3367058, ¶ 5-6.
{¶ 65} In his first assignment of error, appellant argues the trial court erred in granting summary judgment in favor of appellees on appellant's breach of contract claim. Appellant maintains that on February 12, 2013, City Council violated the employment agreement because his termination was not conducted during a duly authorized public meeting. Appellant characterizes his breach of contract claim as being limited to whether the emergency meeting was lawfully held.
{¶ 66} In his second assignment of error, appellant contends the trial court erred in granting summary judgment in favor of appellees on his Ohio Sunshine Law claim. Appellant alleges the emergency meeting and subsequent executive session held on February 12, 2013 was in violation of Ohio law.
{¶ 67} Because the arguments contained in appellant's first and second assignments of error both involve R.C. 121.22, Ohio's Sunshine Law, and are interrelated, this writer will address them together.
{¶ 68} To prevail in an action for breach of contract, a plaintiff must establish the following: (1) an existence of a contract, (2) plaintiff's performance under that contract, (3) defendant's breach, and (4) damages. Harris v. Huff , 11th Dist. Trumbull No. 2008-T-0090, 2010-Ohio-3678, 2010 WL 3081387, ¶ 136.
{¶ 69} On September 21, 2009, appellant and the City entered into a five-year employment agreement. That agreement contained termination and severance clauses, including:
*778 {¶ 70} "Section 11: Termination
{¶ 71} "For the purpose of this agreement, termination shall occur when:
{¶ 72} "(A) The majority of Council votes to terminate the Employee at a duly authorized public meeting.
{¶ 73} "* * *
{¶ 74} "(D) Should the employer remove the Chief of Police for disciplinary reasons, such action shall be for willfully or flagrantly exercising authority or power not authorized by law, refusing or willfully neglecting to enforce the law or to perform any official duty imposed upon by law, or is guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance or nonfeasance or is guilty of misconduct in office."
{¶ 75} As the employment agreement references that the vote of termination take place at a duly authorized public meeting, this matter involves the interpretation of Ohio's Open Meeting Act.[9] "Our review of the trial court's construction of statutes involves questions of law, which we review de novo." Radtke v. Chester Twp. , 2015-Ohio-4016, 44 N.E.3d 295, ¶ 19 (O'Toole, J., concurred with a Concurring Opinion), citing Beaumont v. Kvaerner N. Am. Constr. , 11th Dist. Trumbull No. 2013-T-0047, 2013-Ohio-5847, 2013 WL 6887969, ¶ 8.
{¶ 76} R.C. 121.22, "Meetings of public bodies to be public; exceptions," states in part:
{¶ 77} "(A) This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law.
{¶ 78} "(B) As used in this section:
{¶ 79} "* * *
{¶ 80} "(2) 'Meeting' means any prearranged discussion of the public business of the public body by a majority of its members.
{¶ 81} "* * *
{¶ 82} "(C) All meetings of any public body are declared to be public meetings open to the public at all times. A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting.
{¶ 83} "The minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection. The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) or (J) of this section.
{¶ 84} "* * *
{¶ 85} "(F) Every public body, by rule, shall establish a reasonable method whereby any person may determine the time and place of all regularly scheduled meetings and the time, place, and purpose of all special meetings. A public body shall not hold a special meeting unless it gives at least twenty-four hours advance notice to the news media that have requested notification, except in the event of an emergency requiring immediate official action. In the event of an emergency, the member or members calling the meeting shall notify the news media that have requested notification immediately of the time, place, and purpose of the meeting.
*779 {¶ 86} "* * *
{¶ 87} "(G) * * * [T]he members of a public body may hold an executive session * * * at a regular or special meeting for the sole purpose of the consideration of any of the following matters:
{¶ 88} "(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official * * *."
{¶ 89} Under the City's Charter, Article III, Section 8, provides:
{¶ 90} "Emergency meetings may be called by the Mayor, the Vice-President of Council or any two members of Council. There shall be at least ten hours notice in writing of such emergency meeting served personally on each member of Council or at his usual place of residence. Such notice shall state the subject(s) to be considered at the meeting and no other business may be considered at such meeting." (The Charter of the City of Newton Falls, Appellant's Exhibit 4).
{¶ 91} In addition, Section 21, "Emergency Ordinances, states in part:
{¶ 92} "When necessary, for the preservation for the public peace, health, welfare, or safety, the Council, by affirmation vote of two-thirds of the members elected thereto, may adopt an emergency ordinance which shall take effect upon passage. * * *" (The Charter of the City of Newton Falls, Appellant's Exhibit 4).
{¶ 93} Ohio Sunshine Law authorizes regular meetings, special meetings, and emergency meetings. The difference between a special and an emergency meeting is the amount of notice provided, i.e., at least 24 hours advance notice for a special meeting versus immediate notice for an emergency meeting. See R.C. 121.22(F). The City's Charter, Article III, Section 8, requires 10 hours notice for emergency meetings.
{¶ 94} A key purpose of Ohio's Open Meeting Act, popularly known as the Sunshine Law, is to provide notice to the public and have open meetings. Citizens are entitled to due process and equal protection. Transparency is paramount to promoting justice and instilling public faith in our system of governance. In this case, this writer finds that proper notice was not provided to the public and an open meeting was not held. Furthermore, it is unclear how this action is an emergency under the code.
{¶ 95} The issue related to appellant's breach of contract claim is limited to whether the emergency meeting, i.e., private meeting, was lawfully held. As stated, appellant was terminated under Section 11(A) of the contract. Thus, issues of cause are not relevant here. City Council was able to terminate appellant through a majority vote. This could only be accomplished at a "duly authorized public meeting" under the provisions of appellant's contract, Section 11(A).
{¶ 96} Appellant presents five separate grounds upon which the February 12, 2013 emergency meeting violated his employment contract and/or the City's Charter: (1) business was considered in the emergency meeting which went beyond what was noticed to be considered in the meeting; (2) the agenda noticed for the emergency meeting contained no business to be conducted or considered in public; (3) the emergency meeting was not called by officials authorized to call the meeting; (4) the ordinance, which was the action used to terminate appellant in the emergency meeting, was not enacted in accordance with the City's Charter; and (5) there was no true emergency for the meeting to allow for the meeting to be conducted with less notice to the public and those required to be notified under the City's Charter.
*780 {¶ 97} Regarding appellant's third ground, he asserts the emergency meeting was not properly called as the notice was sent by the City's Clerk, Kathleen King, instead of "the Mayor, the Vice-President of Council or any two members of Council" in accordance with the City's Charter, Article III, Section 8. Although it is true that Ms. King prepared the notice, it is also true that the minutes reflect that the meeting was called to order by Mayor Waddell. (Exhibit U). In totality, I find the majority of the arguments contained in appellant's remaining grounds have merit to the extent indicated.
{¶ 98} Article III of the City's Charter reveals that when City Council conducts an emergency meeting, notice is required to be provided with the purpose of the meeting contained in the notice and no other business may be considered at that meeting. Notice for the February 12, 2013 emergency meeting was prepared on February 11, 2013 with an agenda indicating that the sole purpose of the meeting was to motion to adjourn into executive session, i.e., private, for the purpose of personnel in reference to appellant's employment or dismissal. Nothing other than the adjournment into executive session was provided in the notice and under the City's Charter, no other business could be considered at the February 12, 2013 meeting.
{¶ 99} The minutes reveal that business conducted went beyond the sole purpose as noticed for the February 12, 2013 meeting. At the meeting, Council added and passed emergency Ordinance 2013-02, which terminated appellant's contract. Again, the City's Charter, Article III, Section 21, provides that emergency ordinances are necessary "for the preservation for the public peace, health, welfare, or safety[.]" The Ordinance contained no specific designation as to why it needed to be adopted as an emergency. Also, based on the facts presented, this writer fails to see why appellant's contract had to be terminated immediately and without the proper notice and requisite transparency which is owed to the public. In essence, there was no indication in the record it was an emergency. The notice was deficient on its face.
{¶ 100} The business conducted and considered outside of the executive session did not occur at a duly authorized public meeting, called for the purpose of passing an ordinance or taking a vote to terminate appellant. Thus, the action of appellees to terminate appellant in this meeting violated Section 11(A) of his contract and the City's Charter. As the supposed public meeting was noticed in order for all substantive business to be conducted in private, the meeting could not be and was not a public meeting as required under appellant's contract and its own charter.
{¶ 101} The record establishes that appellees did not comply with the Sunshine Law and the City's Charter in holding the public meeting and executive session. Council lacked authority at that meeting to act under their Charter. Therefore, the employment agreement was terminated at a meeting which was not a duly authorized public meeting, and there was a breach of contract.
{¶ 102} This writer finds appellant's first and second assignments of error have merit.
{¶ 103} In his third assignment of error, appellant maintains the trial court erred in granting summary judgment in favor of appellees on his claim of sexual harassment based on a hostile work environment. Appellant's hostile environment sexual harassment/gender discrimination claim centers around the actions of City Council member Johnson beginning in November 2009.
*781 {¶ 104} To survive summary judgment, appellant must point to some evidence to support each element of his sexual harassment claim, including: (1) that he was a member of a protected class; (2) he was subjected to unwelcomed sexual harassment in the form of the request for sexual favors; (3) the harassment complained of was based on sex; (4) his submission was an express or implied condition for receiving job benefits; and (5) the existence of respondeat superior liability. Scarvelli v. Melmont Holding Co. , 9th Dist. Lorain No. 05CA008793, 2006-Ohio-4019, 2006 WL 2242057, ¶ 10, citing Chamberlin v. Buick Youngstown Co. , 7th Dist. Mahoning No. 02-CA-115, 2003-Ohio-3486, 2003 WL 21504471, ¶ 28, citing Harmon v. Belcan Eng. Group, Inc. , 119 Ohio App.3d 435, 437, 695 N.E.2d 783 (1st Dist.1997), citing Kauffman v. Allied Signal, Inc. , 970 F.2d 178, 185-86 (C.A.6, 1992) ; Highlander v. K.F.C. Natl. Mgt. Co. , 805 F.2d 644, 648 (C.A.6, 1986).
{¶ 105} "The respondeat superior doctrine makes an employer or principal vicariously liable for the torts of its employees or agents. Clark v. Southview Hosp. & Family Health Ctr. , 68 Ohio St.3d 435, 438 * * *(1994). But 'in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment.' Byrd v. Faber , 57 Ohio St.3d 56, 58 * * * (1991)." (Parallel citations omitted.) Auer v. Paliath , 140 Ohio St.3d 276, 2014-Ohio-3632, 17 N.E.3d 561, ¶ 13. A determination as to whether an employee is acting within the scope of his employment can be made at the summary judgment stage when the act was intentional and there was no evidence that it furthered his employment. Reddick v. Said , 11th Dist. Lake No. 2011-L-067, 2012-Ohio-1885, 2012 WL 1493881, ¶ 56.
{¶ 106} Appellant describes several incidents involving comments made by Johnson in public settings in which she referred to his genitalia. The first instance of alleged sexual harassment cited by appellant occurred on November 2, 2009, one day before Johnson was elected to City Council. The second and third instances occurred on November 11 and 16, 2009, after Johnson was elected to Council but before she took office on January 1, 2010. Johnson admits that she referred to appellant's genitalia in a comment that occurred during a November 2009 Council meeting. Although Johnson's comment was clearly inappropriate, respondeat superior liability cannot attach because the foregoing instance(s) occurred before she had taken office. Thus, the timeframe above does not support that Johnson committed any tort while acting within the course and scope of her employment.
{¶ 107} Appellant also asserts that Johnson continued to sexually harass him after she took office. The trial court and appellees point to only a single occurrence on January 11, 2010, involving an instance where appellant claims Johnson pointed at and made a comment regarding his penis. Johnson denies making any such gesture or statement during the January 2010 Council meeting.
{¶ 108} This writer notes that the federal court referenced appellant's further position that he interacted with Johnson three or four times between January 11, 2010 and April 21, 2010 and that Johnson made similar unwelcome sexual comments to him during each of those interactions. Kuivila v. City of Newton Falls , N.D. Ohio Case No. 4:14-cv-01593, 2016 WL 541478, *3 (Feb. 11, 2016). It is appellant's position that even after April 2010, he experienced "many incidents" of similar comments made by Johnson which were based on his gender and were sexually suggestive, offensive, *782 and unwelcome. Id. at *3. Appellant asserts here that Johnson's comments continued through at least the summer of 2012.
{¶ 109} Appellant indicates he complained to City officials about the sexual harassment by Johnson and made written complaints. Appellant states that some of his complaints were sent by email, including emails sent after April 2010. However, the record reveals, and the federal court also indicated, that those emails have not been provided and appellant speculates that they may have been deleted. Id. at *4.
{¶ 110} In May 2010, appellant filed an EEOC charge of discrimination based on sex. The EEOC issued appellant a right to sue letter in which it stated it had reached no conclusion on the merits. Appellant did not file suit on the 2010 EEOC charge. Appellant alleges that Johnson continued to sexually harass him after he filed the 2010 EEOC charge, citing a sexually explicit comment allegedly made by Johnson about him in the summer of 2012. Appellant did not hear the comment but claims his wife and minor daughters did. He said he complained to City Manager Haney. Johnson denied making any comment and Haney did not recall any complaint by appellant regarding this alleged incident. The only evidence of Johnson's alleged 2012 comment that is based on personal knowledge is an affidavit by appellant's wife. See also Kuivila v. City of Newton Falls , 2016 WL 541478, *5.
{¶ 111} Relying on his own affidavit, appellant contends he complained to Haney about sexual harassment by Johnson through the summer of 2012. However, as found by the federal court, "[t]he statements in [appellant's] affidavit regarding his later complaints are conclusory in nature and fail to provide any detail regarding the alleged sexual harassment of which he complained." Id. at *12. Likewise, the trial court below found "the general allegations of a continued pattern are not reliable statements without additional instances of specific conduct." (January 29, 2016 judgment entry, p. 4).
{¶ 112} For sexual harassment to be actionable, it must be, inter alia, sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See Hale v. City of Dayton , 2nd Dist. Montgomery No. 18800, 2002 WL 191588, *3 (Feb. 8, 2002), quoting Hampel v. Food Ingredients Specialties, Inc. , 89 Ohio St.3d 169, 176-177, 729 N.E.2d 726 (2000) ("The Supreme Court of Ohio has set forth the elements required to establish a prima facie case of hostile work environment sexual harassment under Ohio law: In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show '(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.)' "
{¶ 113} While Johnson's acknowledged behavior in 2009 before she took office, and her alleged behavior thereafter, was certainly inappropriate and offensive, it does not constitute sufficiently severe or pervasive harassment to be actionable under R.C. Chapter 4112. Thus, appellant has failed to present sufficient evidence of sexual harassment to survive a motion for summary judgment.
*783 {¶ 114} I agree with the majority that appellant's third assignment of error is without merit.
{¶ 115} In his fourth assignment of error, appellant alleges the trial court erred in granting summary judgment in favor of appellees on his R.C. Chapter 4112 retaliation claim.
{¶ 116} Following his termination, appellant simultaneously filed complaints in both the Trumbull County Court of Common Pleas and the United States District Court for the Northern District of Ohio outlining substantively identical claims involving retaliation. On January 29, 2016, the trial court, inter alia, granted summary judgment in favor of appellees on appellant's R.C. Chapter 4112 retaliation claim. Appellant appealed that decision, i.e., the instant appeal. Thereafter, on February 11, 2016, the Northern District of Ohio granted appellees' motion for summary judgment on appellant's retaliation claims. Kuivila v. City of Newton Falls , 2016 WL 541478. Appellant did not appeal that decision. Thus, he is now precluded by res judicata from re-litigating this issue in this matter.
{¶ 117} Res judicata encompasses two related concepts: (1) claim preclusion, also known as res judicata proper, and (2) issue preclusion, also known as collateral estoppel. O'Nesti v. DeBartolo Realty Corp. , 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6. "Claim preclusion [res judicata] prevents subsequent actions, by the same parties * * *, based upon any claim arising out of a transaction that was the subject matter of a previous action. * * * Where a claim could have been litigated in the previous suit, [res judicata] bars subsequent actions on that matter." Id. On the other hand, collateral estoppel applies when the issue now raised by the defendant (1) was actually litigated in a prior action, (2) by a court of competent jurisdiction, (3) when the party against whom collateral estoppel is asserted was a party in the prior action. Thompson v. Wing , 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994). Collateral estoppel applies even if the causes of action differ. O'Nesti, supra , at ¶ 7.
{¶ 118} Kuivila, supra , involved the same parties and allegations as well as a common retaliation claim as the case sub judice. The Northern District of Ohio thoroughly analyzed appellant's retaliation claim under Title VII in its 26 page opinion. Appellant stresses that the retaliation claim in the trial court was brought under R.C. 4112.02 while the claims in federal court were based on retaliation in violation of the First Amendment and Title VII. However, retaliation claims brought under the Ohio statute, R.C. Chapter 4112, are subject to the same analysis as claims brought under federal Title VII. See, e.g. , Ulmer v. Dana Driveshaft Mfg. , N.D. Ohio No. 3:15 CV 1255, 2016 WL 99593, *2 (Jan. 8, 2016), citing Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm. , 61 Ohio St.3d 607, 609, 575 N.E.2d 1164 (1991). As such, appellant's present retaliation claim here is barred by res judicata.
{¶ 119} I agree with the majority that appellant's fourth assignment of error is without merit.
{¶ 120} For the foregoing reasons, this writer finds appellant's first and second assignments of error well-taken and his third and fourth assignments of error without merit. Because I find the trial court's judgment should be affirmed in part, reversed in part, and remanded, I respectfully concur in part and dissent in part.

Kuivila's Complaint was subsequently amended on July 30, 2014, and September 14, 2015. Layshock was omitted as a defendant in the subsequent Amended Complaints.

Johnson testified by deposition that she thought Hoffman called the emergency session, but also that she was not sure and could not remember.

As the defendants note, the Employment Agreement does not qualify what is meant by "vote" nor require that termination be effected by ordinance. The City Charter further provides: "Where action by Council is not required to be by ordinance, Council may act by resolution or motion." Article III, Section 22.

Ashley Grunder complained that Kuivila made "extremely inappropriate" comments referencing her "appearance and certain body parts." Officer Sheri Jervis complained that Kuivila had "made a threat" regarding "a personal matter" which created a hostile environment in which she was "fearful."

According to Article II, Section 3 of the City's Charter, the Mayor "shall be recognized as a member of Council, but shall have a vote only in the event of a tie."

Whether the City's Charter expressly authorizes retirement into executive session independently of R.C. 121.22 is not relevant to the issue of whether the February 12, 2013 emergency session violated the Sunshine Law.

The foregoing account is based on Kuivila's deposition and affidavit testimony and Danielle's affidavit testimony. The accuracy of this account is disputed on various points by other witnesses. For purposes of summary judgment, however, Kuivila is entitled to have the evidence construed in his favor and to enjoy the benefit of all reasonable inferences.

Kuivila testified by deposition that he did not believe the January 11, 2010 incident where Johnson put her fingers on his penis "fit the elements of any criminal charge."

The employment agreement does not specify that the form of termination must be done via a particular method, i.e., motion, resolution, or ordinance. Instead, the agreement merely provides that the action must be done at a duly authorized public meeting.