[Cite as *King v. Newton Falls*, 2024-Ohio-782.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

KATHLEEN KING,

Plaintiff-Appellee,

- vs -

CITY OF NEWTON FALLS, OHIO, et al.,

Defendant-Appellant.

CASE NO. 2023-T-0074

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2022 CV 00562

**O P I N I O N**

Decided: March 4, 2024
Judgment: Affirmed

*Jared S. Klebanow*, Klebanow Law, LLC, and *Avery Friedman*, Avery Friedman & Associates, 701 The City Club Building, 850 Euclid Avenue, Cleveland, OH 44114 (For Plaintiff-Appellee).

*R. Eric Smearman* and *Caitlin M. Thompson*, Smith Marshall, LLP, 7251 Engle Road, Suite 404, Middleburg Heights, OH 44130 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, the city of Newton Falls, Ohio ("Newton Falls"), appeals from the judgment of the Trumbull County Court of Common Pleas that granted appellee Kathleen King's ("Ms. King") motion for summary judgment, found Newton Falls in breach of Ms. King's employment contract, and ordered it to pay $252,458 in severance pay.

{¶2} Newton Falls raises three assignments of error on appeal, contending the trial court erred by finding (1) Newton Falls City Ordinance 2020-36 ("Ord. 2020-36"), which authorized Ms. King's employment contract, was not void; (2) Newton Falls City Ordinance 2021-29 ("Ord. 2021-29") was void; and (3) the severance clause in Ms. King's

employment contract was valid. Newton Falls argues the trial court should have found (1) Ord. 2020-36 was an improperly passed ordinance since it was not a valid emergency measure, and it was not published as a regular ordinance; (2) Ord. 2021-29 was a valid ordinance that repealed Ord. 2020-36 and rescinded Ms. King's contract; (3) the severance clause in Ms. King's employment contract violated public policy and intruded on a political subdivision's interest in preserving fiscal integrity.

{¶3} After a careful review of the record and pertinent law, we find Newton Falls' assignments of error to be without merit. A review of the parties' cross motions for summary judgment reveals there are no genuine issues of material fact and that Ms. King was entitled to summary judgment as a matter of law on the claims in her complaint.

{¶4} Firstly, we agree with the trial court's determination that the addition of a deficient emergency clause to Ord. 2020-36 did not change the substance of the ordinance requiring republication and that it took effect in due time as a regular ordinance even if it lacked true emergency status.

{¶5} Secondly, Ord. 2021-29 is void ab initio since it violates Article II, Section 28 of the Ohio Constitution by impairing the obligations of the parties' employment agreement in its entirety. Ord. 2021-29 purported to repeal Ord. 2020-36 because it was improperly passed, which in effect, voided the employment agreement.

{¶6} Thirdly, besides a bare assertion that the severance clause in the employment agreement violates public policy because it intrudes on a political subdivision's interest in preserving fiscal integrity, Newton Falls has failed to demonstrate on summary judgment that the clause is invalid and that it does not owe Ms. King severance pay per the terms of the agreement.

2

{¶7} The judgment of the Trumbull County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶8} In May 2022, Ms. King filed a complaint against Newton Falls in the Trumbull County Court of Common Pleas. The complaint alleged that Ms. King began working for Newton Falls as a part-time employee in the prosecutor's office in 1992. In 1994, Newton Falls appointed her to serve as the city clerk. She has served as the city clerk for 25 years with no issues or disciplinary action and was well-regarded.

{¶9} On November 23, 2020, Newton Falls passed Ord. 2020-36, which approved her employment contract as city clerk from December 1, 2020, through May 30, 2025, with a salary of $72,500 per year. Per the contract terms, if Newton Falls chose to end the agreement early, it was required to give her 30 days' written notice and pay her the remainder of the term unless she was convicted of a felony. Ms. King has never been convicted of a felony.

{¶10} On December 6, 2021, Newton Falls passed Ord. 2021-29, repealing Ord. 2020-36. Ms. King's employment contract was terminated without giving her 30 days' written notice, and her pay was reduced to $28.00/hour without longevity or license pay.

{¶11} On February 25, 2022, Newton Falls held a special meeting during which Ms. King's employment as city clerk was terminated.

{¶12} Ms. King was not paid the remaining balance of her contract.

{¶13} Ms. King brought claims for (1) a declaratory judgment that Ord. 2021-29 violated Article II, Section 28 of the Ohio Constitution by impairing the obligations of her employment contract and is void, and (2) breach of contract, entitling her to a payout of $236,369 in severance pay, the remainder of her employment agreement.

3

Case No. 2023-T-0074

**Ms. King's Motion for Summary Judgment**

{¶14} In June 2023, Ms. King filed a motion for summary judgment, contending (1) Ord. 2020-36 was properly enacted under Newton Falls' charter, and even if it was not, it was not challenged by referendum within 30 days as required; thus, it is valid; (2) Ord. 2021-29 is unconstitutional because it impairs contractual obligations; and (3) she has a vested right to the balance of her compensation as provided for in her employment agreement.

{¶15} In support of her motion, Ms. King filed the depositions of herself; Christopher Granchie, former council member (2020-2021); Lyle Waddle, former mayor (2010-2019) and council member (2019-2020); Pamela Priddy, city manager (2021-2024); Tera Spletzer, council member (2020-present); Julie Stimpert, council member (2021-present); and John Robert Baryak Jr. ("Mr. Baryak"), council member (1992-1993 and 2016-present).

{¶16} Ms. King also filed the exhibits from the depositions of herself and Mr. Baryak, which included Newton Falls' record of proceedings for the November 16, 2020 and November 23, 2020 council meetings (the first and second readings of Ord. 2020-36), the last of which included Ord. 2020-36 as passed and Ms. King's employment agreement; the record of proceedings for the December 6, 2021 council meeting, which included Ord. 2021-29 as passed; and the notice for a special council meeting and executive session on February 25, 2022, to discuss Ms. King's termination.

{¶17} Ord. 2020-36, entitled "An Ordinance Authorizing a Contract with the City Clerk and Declaring an Emergency," authorized the city manager to enter into an employment agreement with Ms. King. The record of proceedings revealed that the

4

ordinance was read, and council allowed for public comment at the November 16 and 23, 2020 meetings. At the second meeting, the ordinance was amended "to be an emergency measure necessary for the immediate preservation of the public peace, health and welfare of the citizens of the City of Newton Falls" so that it could take effect immediately. Ms. King's employment agreement stated it was effective December 1, 2020.

{¶18} A review of Ord. 2021-29, which was passed at the December 6, 2021 meeting, reveals it declared it was repealing Ord. 2020-36 because, in the opinion of Newton Falls' law director, Ord. 2020-36 was void at the time it passed since it failed to adequately list a reason to be passed as an emergency ordinance, it did not receive the two readings necessary to become effective as a regular ordinance, and it lacked a fiscal officer's certification of availability of funds. In addition to repealing Ord. 2020-36, Ord. 2021-29 also repealed the ordinances that authorized the 2020 employment agreements for the chief of police, finance director, and city manager (respectively, Ord. 2020-34, Ord. 2020-35, and Ord. 2020-37).

{¶19} In addition to filing a brief in opposition to Ms. King's motion for summary judgment, Newton Falls filed a cross-motion for summary judgment. Newton Falls contended (1) Ms. King's employment agreement was void ab initio because Ord. 2020-36 was not passed in accordance with the city's charter requirements for passing an emergency ordinance and/or a regular ordinance; (2) Ord. 2021-29 was properly passed and was not in violation of Article II, Section 28 of the Ohio Constitution; and (3) the employment agreement is void as contrary to public policy. Attached to Newton Falls' motion were exhibits that included an excerpt of the city's charter, a record of proceedings

5

Case No. 2023-T-0074

of council meetings on November 16, 2020, November 23, 2020, and December 6, 2021, and Ms. King's deposition.

## Judgment in Favor of Ms. King

{¶20} The trial court found there were no genuine issues of material fact and that Ms. King was entitled to summary judgment on the counts of her complaint, thus granting Ms. King's motion for summary judgment and denying Newton Falls' cross-motion for summary judgment.

{¶21} Firstly, the trial court found that Ord. 2020-36 failed as an emergency ordinance because it did not set forth the reasons for its passage as an emergency ordinance pursuant to Article III, Section 21 of Newton Falls' charter, which mirrors the language in R.C. 731.30. Because the ordinance was not challenged by referendum within 30 days, however, it took effect as a regular ordinance 30 days after passage, and the addition of a deficient emergency clause to Ord. 2020-36 did not change the substance of the ordinance requiring republication.

{¶22} Secondly, the trial court found that Ord. 2021-29 was void because it violated Article II, Section 28 of the Ohio Constitution, which prohibits interfering with the "obligation of contracts." Ord. 2021-29 impaired Ms. King's employment agreement in its entirety.

{¶23} Lastly, the trial court found that Newton Falls breached Ms. King's employment agreement. It was undisputed Newton Falls did not pay Ms. King's severance payment, she was terminated without just cause, and she has never been convicted of a felony. Further, the agreement does not violate public policy since basic

6

contract law prevents an injurious outcome to the public, i.e., if Ms. King breached the employment agreement, she would not be able to enforce the agreement.

{¶24} Thus, the court found there were no genuine issues of material fact and Ms. King was entitled to summary judgment on the counts of her complaint, including severance pay in the amount of $252,458.

{¶25} Newton Falls raises three assignments of error for our review:

{¶26} "[1.] The Trial Court erred by denying Appellant's motion for summary judgment * * * and holding that Ordinance 2020-36 was properly passed under the Newton Falls charter and Ohio law and therefore not void *ab initio.*

{¶27} "[2.] The Trial Court erred by granting Appellee's motion for summary judgment * * * and denying Appellant's motion for summary judgment * * * by ruling that Ordinance 2021-29 impaired Appellee's Employment Contract, and was void in violation of Article II, Section 28 of the Ohio Constitution.

{¶28} "[3.] The Trial Court erred by granting Appellee's motion for summary judgment * * * on her claim for breach of contract, and denying Appellant's motion for summary judgment * * * as the severance clause in Appellee's Employment Contract was void as it violated public policy and intruded on a political subdivision's interest in preserving fiscal integrity."

### Summary Judgment

{¶29} In its three assignments of error, Newton Falls contends the trial court erred by granting Ms. King's motion for summary judgment and denying its cross-motion for summary judgment.

7

Case No. 2023-T-0074

{¶30} We review de novo a trial court's order granting summary judgment. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 9. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Id.*

{¶31} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt*[, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record, or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40.

{¶32} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party

8

fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112[, 526 N.E.2d 798]." *Ziccarelli* at ¶ 40.

### Ord. 2020-36

{¶33} In its first assignment of error, Newton Falls contends Ord. 2020-36 was not properly passed as an emergency ordinance because it was improperly amended to add an emergency clause at the second reading of the ordinance on November 23, 2020. Newton Falls contends that this amendment was a "substantial change" to the ordinance that mandated an additional reading pursuant to the city's charter. Since it was not properly enacted as an emergency ordinance, the trial court should have found Ord. 2020-36 was void ab initio.

{¶34} Pursuant to R.C. 731.30, "emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure."

{¶35} Likewise, former (in effect at the time Ord. 2020-36 was passed) section 21 of Newton Falls' charter, "Emergency Measures," states:

{¶36} "When necessary, for the preservation for the public peace, health, welfare, or safety, the Council, by affirmative vote of two-thirds of the members elected thereto, may adopt an emergency ordinance which shall take effect upon passage. Such

9

emergency ordinance shall set forth and define the specific facts designating the emergency. Such emergency ordinance shall require no public hearing and both the first and second reading may be passed at the same meeting. Such emergency ordinance shall be published as other ordinances after final passage."[1]

{¶37} To pass a regular ordinance, the city's charter states:

{¶38} "Section 16. Procedure for Passage of Ordinances and First Reading.

{¶39} "Every ordinance, except emergency ordinances, shall be introduced in writing in the form in which it is to be finally passed, and after passage on first reading shall be published by title only, at least once, in a newspaper of general circulation in the City, together with a notice of the time and place when and where it will be given a public hearing and be considered for final passage. The first such publication shall be at least one week prior to the time advertised for the public hearing.

{¶40} "Section 17. Second Reading and Public Hearing.

{¶41} "At the time and place so advertised, or at any time and place to which such hearing shall from time to time be adjourned, such ordinance shall be read by title only and after such reading all persons interested shall be given an opportunity to be heard.

{¶42} "Section 18. Further Consideration and Final Passage.

---

1. We note section 21 of Newton Falls' charter was amended on November 8, 2022, and November 7, 2023. Attached as an exhibit to Newton Falls' motion for summary judgment was an excerpt of section 21 as amended on November 8, 2022, which included an additional clause: "It is not sufficient for the passage of an ordinance as an emergency measure to merely state the ordinance is necessary for the immediate preservation of the public peace, health, welfare, or safety, without providing additional rationale for passing the ordinance on an emergency basis. In the absence of such additional justifying language, electors shall have the right to exercise any referendum rights available with respect to the ordinance. If the emergency ordinance does not receive an affirmative vote of two-thirds of the members elected to Council on its first reading, the ordinance shall be deemed to have failed to pass at that meeting and shall require two additional readings and a public hearing before passage as required by Article III, Section 15 of the Charter."

10

Case No. 2023-T-0074

**{¶43}** "After such hearing, the Council may finally pass such ordinance with or without amendment, except that if it shall make an amendment which constitutes a charge [sic] of substance, it shall not finally pass the ordinance until it shall have caused the amended title to be published at least once, together with a notice of the time and place when and where such amended ordinance will be further considered, which publication shall be at least three days prior to the time stated. At the time so advertised or at any time and place to which such meeting shall be adjourned, the amended ordinance shall be read by title only and a public hearing thereon shall be held and after such hearing the governing body may finally pass such amended ordinance, or again amend it subject to the same conditions. The second passage of any ordinance pursuant to this Charter shall be final, and no further passage shall be required."

**{¶44}** This court has held that an appellant may not raise the lack of a legitimate emergency as a disputed issue of material fact precluding summary judgment. *Kuivila v. Newton Falls*, 2017-Ohio-7957, 98 N.E.3d 764, ¶ 27 (11th Dist.).

**{¶45}** This is so because "[w]here an ordinance, passed by the council of a municipality, is declared to be an emergency measure * * * and sets forth the reasons for the immediate necessity thereof, the legislative determination of the existence of an emergency is not reviewable by a court." *Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 519 N.E.2d 347 (1988), paragraph three of the syllabus.

**{¶46}** "The rationale for the R.C. 731.30 requirement of stating reasons for declaring an emergency is to satisfy voters that their representatives had valid reasons to declare that the ordinance was an emergency, and '"[i]f there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an

opportunity to take appropriate action in the subsequent election of their representatives.'''" *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 13, quoting *State ex rel. Moore v. Abrams*, 62 Ohio St.3d 130, 132, 580 N.E.2d 11 (1991), quoting *State ex rel. Fostoria v. King*, 154 Ohio St. 213, 220-221, 94 N.E.2d 697 (1950). *Accord Kuivila* at ¶ 28.

**{¶47}** However, the stated reasons for declaring the ordinance an emergency may be challenged, such as including purely conclusory, tautological, or illusory language in the emergency measure. *Bliss* at ¶ 14. As the Supreme Court of Ohio explained, "the statutory duty to set forth reasons for an emergency in an ordinance is mandatory." *Id.*

**{¶48}** If Newton Falls believed Ord. 2020-36 failed to sufficiently state reasons for its passage as an emergency measure, it should have pursued other legal action, such as a writ of mandamus, to allow for a referendum petition. *See Bliss* ¶ 24 (issuing a writ to allow for a referendum petition of an ordinance that failed to sufficiently state reasons for its passage as an emergency measure).

**{¶49}** Furthermore, even if sufficient reasons were not stated for Ord. 2020-36 to be a valid emergency measure, it took effect in due course as a regular ordinance. For example, in *Youngstown v. Aiello*, 156 Ohio St. 32, 100 N.E.2d 62 (1951), the ordinance failed to sufficiently state reasons for its passage as an emergency measure. *Id.* at 37. There was no challenge, however, to its validity as an emergency measure by a referendum proceeding or otherwise. In addition, it was presumed that the ordinance was duly published since the city's charter required that all ordinances be published and there was no evidence to the contrary. *Id.* The Supreme Court of Ohio held that under these circumstances, the ordinance became effective in due time as a valid ordinance. *Id.*

12

**{¶50}** Similarly, in *Medina ex rel. Jocke v. Medina*, 9th Dist. Medina No. 20CA0044-M, 2021-Ohio-4353, the Ninth District aptly explained,

**{¶51}** "The general rule is that an ordinance passed by a city council does not take effect for 30 days. During that period, electors may file a referendum petition requiring the ordinance to be placed on the ballot for approval or rejection. R.C. 731.29. However, emergency ordinances 'necessary for the immediate preservation of the public peace, health, or safety' are not subject to referendum and 'shall go into immediate effect.' R.C. 731.30.

**{¶52}** "Here the appellants challenge whether [the ordinance] qualified as an emergency measure. If it did, then it went into effect immediately, and a referendum petition was not available. On the other hand, if it did not meet the statutory requirements for an emergency measure, then it did not take effect for 30 days and could have been challenged through a timely referendum (if the appellants wished to pursue that remedy). But because the appellants did not pursue a timely referendum, or initiate any other legal challenge during the 30-day window, [the ordinance] necessarily took effect no later than 30 days after its passage, regardless of whether it qualified as an emergency measure. At this point, then, it matters not whether [the ordinance] qualified as an emergency measure. The ordinance took effect in due time as a regular ordinance even if it lacked true emergency status." (Internal citations omitted.) *Medina* at ¶ 13-14. *See also McNair v. Brecksville*, 2017-Ohio-7401, 96 N.E.3d 1078, ¶ 17-27 (8th Dist.) (holding that an ordinance became effective in due time as a regular ordinance even if it was improperly passed as emergency legislation).

**{¶53}** Further, whether Ord. 2020-36 was a valid emergency measure or a regular ordinance makes no difference to the terms of the employment agreement, including its effective date of December 1, 2020. Ms. King explained in her deposition that even if Ord. 2020-36 was enacted as a regular ordinance with a 30-day waiting period, becoming effective on December 23, 2020, the contract would still have been effective on December 1, 2020, with all pay being retroactive. She further testified that other than the 30-day waiting period, there is no difference between an emergency ordinance and a regular ordinance.

**{¶54}** In addition, we note that Newton Falls' argument that declaring the ordinance an emergency was an amendment reflecting a "substantial change" that required an additional publication is a circular argument that belies common sense. A republication would defeat the purpose of passing the ordinance as an emergency measure. Further, a republication would be contrary to the procedure to pass an emergency ordinance pursuant to section 21 of Newton Falls' charter.

**{¶55}** Most fundamentally, Newton Falls failed to introduce any evidentiary quality materials in its cross-motion for summary judgment or in opposition to Ms. King's motion for summary judgment that Ord. 2020-36 was not properly enacted as an emergency measure or as a regular ordinance that took effect in due time, i.e., there was no evidence it was not published in its final form.

**{¶56}** Newton Falls' first assignment of error is without merit.

### Ord. 2021-29

**{¶57}** In its second assignment of error, Newton Falls contends the trial court erred by finding that Ord. 2021-29 violated Article II, Section 28 of the Ohio Constitution

14

Case No. 2023-T-0074

by impairing the parties' employment agreement. Newton Falls further contends the trial court should have found Ord. 2021-29 revoked an invalidly passed ordinance. Since Ms. King's employee agreement was passed pursuant to a void ordinance, the trial court should have also found the contract void.

{¶58} In *Trumbull Cty. Bd. of Commrs. v. Warren*, 142 Ohio App.3d 599, 756 N.E.2d 690 (11th Dist.2001), we explained:

{¶59} "Section 28, Article II of the Ohio Constitution forbids the passage of any law that impairs 'the obligation of contracts.' In construing a similar provision in the United States Constitution, the Ohio Supreme Court has noted that "'[a]lthough the Contract Clause appears literally to proscribe 'any' impairment, * * * 'the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.''" *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 77, * * * 495 N.E.2d 380 * * *, quoting *United States Trust Co. v. New Jersey* (1977), 431 U.S. 1, 21, 97 S.Ct. 1505 * * *, 52 L.Ed.2d 92 * * *, quoting *Home Bldg. & Loan Assn. v. Blaisdell* (1934), 290 U.S. 398, 428, 54 S.Ct. 231 * * *, 78 L.Ed. 413 * * *.

{¶60} "Rather, a court must first ascertain whether the law "'operated as a *substantial* impairment of a contractual relationship.'" (Emphasis *sic.*) *Ferguson* at 77, * * * quoting *Allied Structural Steel Co. v. Spannaus* (1978), 438 U.S. 234, 244, 98 S.Ct. 2716 * * *, 57 L.Ed.2d 727 * * *. See, also, *State ex rel. Horvath v. State Teachers Retirement Bd.* (1998), 83 Ohio St.3d 67, 76, 697 N.E.2d 644 * * *. This inquiry has three distinct components: (1) whether there is a contractual relationship, (2) whether a change in the law impairs that contractual relationship, and (3) whether the impairment is substantial. *Horvath* at 76 * * *." *Id.* at 602-603.

15

Case No. 2023-T-0074

**{¶61}** Firstly, there is no doubt there is a contractual relationship between Newton Falls and Ms. King for her employment as a city clerk for a stated term of four and one-half years and a yearly salary of $72,500.

**{¶62}** Secondly, Ord. 2021-29 impaired the parties' employment agreement, i.e., Ord. 2021-29 repealed Ord. 2020-36 and purported to void Ms. King's employment agreement as a result. As the Supreme Court of Ohio explained in *Ferguson*, "'Once having granted certain powers to a municipal corporation, which in turn enters into binding contracts with third parties who have relied on the existence of those powers, the legislature * * * is not free to alter the corporation's ability to perform.'" *Id.* at 76, quoting *Continental Illinois Natl. Bank v. Washington*, 696 F.2d 692, 700 (9th Cir.1983). Through its enactment of Ord. 2021-29, Newton Falls did not just breach the parties' employment agreement, it created a constitutional issue. *See id.*, quoting *E & E Hauling, Inc. v. Forest Preserve Dist. of Du Page Cty.*, 613 F.2d 675, 678 (7th Cir.1980) ("'Mere refusal to perform a contract by a state does not raise a constitutional issue, but when a state uses its legislative authority to impair a contract a constitutional claim is stated.'") (Emphasis deleted.). In other words, Ord. 2021-29 went "beyond a mere breach of contract because its passage precluded any remedy in damages." *Id.* at 77.

**{¶63}** Thirdly, the impairment is substantial since it purports to void the entire employment agreement. To determine whether an impairment is substantial we consider the extent to which reasonable expectations in the contract are disrupted. *Ferguson* at 77. The Supreme Court of the United States has noted that an impairment is especially severe where a party has relied on an obligation that is impaired by legislation, such as when the legislation impairs the express terms of a contract. *See id.*; *Allied Structural*

16

*Steel Co.* at 246-247. In this case, Ord. 2021-29 substantially impaired the express terms of the employee agreement.

**{¶64}** Lastly, we must consider whether there was justification for this impairment. "A law substantially impairing the obligations of a contract 'may be constitutional if it is reasonable and necessary to serve an important public purpose.'" *Ferguson* at 79, quoting *U. S. Trust Co.* at 25.

**{¶65}** As we reviewed, Ord. 2021-29 declares no public purpose aside from stating that it is repealing a void ordinance and that the employment agreements it authorized are void. However, as we explained in the first assignment of error, Ord. 2020-36 was passed in due time as a regular ordinance even if it did not satisfy the statutory requirements of an emergency measure.

**{¶66}** As in *Ferguson,* Ord. 2021-29 was neither reasonable nor a necessary means of dealing with an ordinance that was not challenged within the proper time by a petition for a referendum or a writ to allow such a petition. *See id.* at 79. Rather, it was the "most drastic means" of addressing Ord. 2020-36 and "'worked a severe, permanent, and immediate change in those relationships—irrevocably and retroactively.'" *Id.*, quoting *Allied Structural Steel Co.* at 250.

**{¶67}** We agree with the trial court that Ord. 2021-29 is void ab initio, i.e., because Ord. 2021-29 was unconstitutional at the time of its passage, it was void from its inception. *See Ferguson* at 80. "'An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.'" *Id.*, quoting *Norton v. Shelby Cty.*, 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178 (1886).

17

**{¶68}** Newton Falls' second assignment of error is without merit.

## Breach of Contract

**{¶69}** In its third assignment of error, Newton Falls contends the severance clause in the parties' employment contract should be declared void and severed because it violates public policy and intruded on a political subdivision's interest in preserving fiscal integrity.

**{¶70}** In order to prove a breach of contract claim, a plaintiff must provide evidence of (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages. *Huffman v. Kazak Bros., Inc.*, 11th Dist. Lake No. 2000-L-152, 2002 WL 549858, *4 (Apr. 12, 2002).

**{¶71}** "In construing the terms of any contract, the principal objective is to determine the intention of the parties." *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987). When determining the parties' intent in the language of the contract, a reviewing court must read the contract as a whole and give effect, when possible, to every provision in the agreement. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361-362, 678 N.E.2d 519 (1997).

**{¶72}** When the terms in an existing contract are clear and unambiguous, we cannot create a new contract "by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). A contract is unambiguous if it can be given a "definite legal

18

Case No. 2023-T-0074

meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11. "If the meaning is apparent, the terms of the agreement are to be applied, not interpreted." *Albert v. Shiells*, 10th Dist. Franklin No. 02AP-354, 2002-Ohio-7021, ¶ 20.

{¶73} Neither party disputes that Ms. King was terminated without 30 days' written notice, that she was terminated without just cause, that she has never been convicted of a felony, and that Newton Falls did not pay her any severance as per the terms of the employment agreement.

{¶74} Newton Falls cites *Lawless v. Bd. of Edn. of Lawrence Cty. Educational Serv. Ctr.*, 2020-Ohio-117, 141 N.E.3d 267 (4th Dist.), in support of its public policy argument, which the trial court found inapplicable.

{¶75} In *Lawless*, a board of education terminated the employment contract of its treasurer, Teresa Lawless ("Ms. Lawless"), after an audit revealed she had illegally expended public monies. *Id.* at ¶ 1. One of the issues on appeal involved the severance pay clause of Ms. Lawless' employment agreement. *See id.* at ¶ 37. The employment agreement specified that Ms. Lawless could only be terminated in accordance with R.C. 3319.16, which authorizes termination for "good and just cause." *Id.* at ¶ 39, 40. The board contended that the stated public policy of R.C. 3319.16 supports the termination of public employees who fail to perform their duties, that it terminated Ms. Lawless pursuant to that statute, and that public policy dictates that such an employee should not receive compensation for time not worked. *Id.* at ¶ 37.

19

**{¶76}** The Fourth District found that compensating an individual who is terminated for "good and just cause" was inconsistent with R.C. 3319.06 and the other statutes at issue because "'when an *employee is at fault*, the employee is no longer the victim of fortune's whims, but is instead directly responsible for the employee's own predicament.'" (Emphasis added.) *Id.* at ¶ 41, quoting *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697-698, 653 N.E.2d 1207 (1995).

**{¶77}** We agree with the trial court that *Lawless* is inapplicable. Newton Falls did not terminate Ms. King pursuant to a statute that required "good and just cause" and that set forth an explicitly stated fiscal public policy.

**{¶78}** Nor is this case similar to *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 660 (1969), an equal protection case in which the Supreme Court of the United States found various state statutes and a District of Columbia statute unconstitutional for denying welfare benefits to those residents who resided in their jurisdictions for less than one year. *See id.* at 622.

**{¶79}** Likewise, there is nothing analogous to this case in *Van Der Veer v. Ohio Dept. of Transp.*, 113 Ohio App.3d 60, 680 N.E.2d 230 (10th Dist.1996), a case that dealt with equal protection and due process arguments in the context of the extent of the state's liability pursuant to R.C. 2743.02(D) in an action for monetary damages after collateral insurance setoffs were applied. *See id.* at 66-68.

**{¶80}** Newton Falls makes only a vague assertion of public policy preserving a political subdivision's fiscal integrity pursuant to a statute. Further, it has not carried its burden on summary judgment by demonstrating a genuine issue of material fact exists as to the validity of the severance clause and/or that it has not breached the parties'

20

employment agreement and does not owe Ms. King severance pay on the remainder of the agreement by the agreement's express terms. "It is not the responsibility or function of this court to rewrite the parties' contract to provide for such circumstances. Where a contract is plain and unambiguous as herein, it does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties." *Aultman Hosp. Assn v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 54-55, 544 N.E.2d 920 (1989).

{¶81} In conclusion, we note again the burdens on summary judgment. Whether one looks at Newton Falls as the moving party or the nonmoving party in the parties' cross motions for summary judgment, Newton Falls failed to carry its burden on summary judgment to introduce evidentiary quality materials that raised a genuine issue of material fact and/or that the trial court should have awarded summary judgment in its favor as a matter of law.

{¶82} It bears repeating that "[t]he moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but *must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims*." (Emphasis added.) *Welch* at ¶ 40.

{¶83} As the nonmoving party, "[o]nce the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Slyman v. Piqua*, 494 F.Supp.2d 732, 734 (S.D.Ohio 2007), quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586,

21

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").

{¶84} Newton Falls' third assignment of error is without merit.

{¶85} The judgment of the Trumbull County Court of Common Pleas is affirmed.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.